IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TERRY CHAPPELL, ) | Civil Action No.: 0:07-cv-2634-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | |
| ) | REPORT AND RECOMMENDATION |
| JON OZMINT, DIRECTOR SCDC; ) | |
| NFN SCDC PRIMARY CARE DIRECTOR; ) | |
| DR. BEARDEN; AND TIM RILEY, ) | |
| WARDEN OF TYGER RIVER ) | |
| CORRECTIONAL INSTITUTION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The *pro se* plaintiff filed this action under 42 U.S.C. § 1983[1] on July 30, 2007. Plaintiff alleges that his constitutional rights were violated due to medical indifference while an inmate at Tyger River Correctional Institution (TRCI). Plaintiff filed an amended complaint on January 22, 2008. Defendants filed a Motion for Summary Judgment on March 28, 2008. The undersigned issued an order filed March 31, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the Motion for Summary Judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response on April 28, 2008, and defendants filed a reply on May 7, 2008.[2]

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] This case was reassigned to the undersigned on February 9, 2009. (Doc. #65).

# I.  DISCUSSION

## A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs. Plaintiff asserts that he was diagnosed in September 2003 as having a "life threatening disease" of Hepatitis C. (Amended Complaint, p.1). Plaintiff asserts that the first protocol he was advised of provided that treatment is "only necessary in the event that the prisoner's liver enzyme's tests results (ALT) are greater than two times the upper limit normal (U.N.) three times within six (6) months and incarceration is still more than (18) eighteen months." (Amended compl. P. 2). Plaintiff asserts that "Tyger River began his treatment under the existing protocol to check his ALT levels as provided by that protocol." Id. Plaintiff alleges that on November 1, 2007, plaintiff was brought before SCDC's medical personal at TRCI and informed that the protocol had changed and that he was excluded from treatment due to the fact that his incarceration was less than 24 months. Plaintiff alleges that any treatment he was already receiving under the original protocol to check his ALT levels was stopped due to the fact that the incarcerated term increased by six months from the original protocol where plaintiff was receiving treatment. Id.

In his amended complaint, plaintiff seeks injunctive relief, and damages for emotional distress. (Doc. #47). As will be discussed below, plaintiff's claims for injunctive relief are moot in that he has since been released from TRCI and his claims for emotional distress fail as he has failed to show a physical injury.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to

2

fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. MEDICAL INDIFFERENCE

As previously discussed, plaintiff asserts that defendants were deliberately indifferent to his medical needs with relation to tests and treatment of Hepatitis C.

Defendants filed a motion for summary judgment along with a memorandum, an affidavit from Dr. J. Glenn Alewine, the SCDC's Hepatitis C Treatment Plan Booklet, and plaintiff's medical records.

Dr. Alewine attests that he is a licensed physician having been employed by the SCDC since 1988. Dr. Alewine attests that he has been directly involved in the development and implementation of the medical protocol used to treat inmates diagnosed with Hepatitis C which went into effect November 2007. (Copy of protocol attached to affidavit). Dr. Alewine states that pursuant to protocol to qualify for treatment an inmate must have at least 2 years remaining on his sentence which represents the length of time for evaluation, treatment and followup to be completed. Because of the potential risks and side effects that can occur as a result of treatment, it is medically necessary to monitor treatment of prisoners receiving the treatment through its conclusion. Therefore, treatment cannot safely begin for prisoners who will reach their max out date before the two-year period. Alewine attests that he did not have any personal involvement with and has not served as the direct treating physician for the plaintiff but has reviewed the records in conjunction with this affidavit and the application of the new protocol to this situation. (Alewine affidavit, p. 2). Pursuant to the prior protocol, plaintiff did not qualify for treatment since his liver enzymes (ALT) test results had never exceeded two times the upper limit of normal as required. Id. Plaintiff did not meet the criteria for treatment under the current protocol since his release date would be during the time of required treatment. Id. Alewine attests that based on his medical background and training, it is his opinion

4

that the current hepatitis C treatment protocol established by the SCDC is consistent with generally accepted medical research guidelines and practices in this area. The protocol provides criteria by which medical professionals of the SCDC can determine whether a particular inmate of the SCDC, who has been diagnosed with Hepatitis C, is an appropriate candidate of certain specified treatment regimes, including Interferon based therapies. Id. The process involves review of a number of factors including anticipated period of incarceration, medical behavioral history, and specified clinical findings. Id. The reviewing medical professional works through a checklist and must determine that the particular inmate meets the required criteria at each level in order to trigger consideration of the criteria at the next level. Id. A particular inmate may be excluded as a potential candidate for specific treatment, based on the criteria at any level. Id.

The undersigned finds that the plaintiff fails to show that defendants were deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v.

Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

     Plaintiff has failed to show that he was denied medical treatment. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not shown that any conduct by this defendant "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care

is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action.  Russell v. Sheffer, supra.

Plaintiff did not agree with the type of treatment or protocol for treatment by the SCDC. Plaintiff apparently disagrees with the decision that he was not an appropriate candidate for treatment. Plaintiff's ALT levels were followed under the prior protocol and, based on the evidence submitted, followed at least through January 2008. (See exhibits attached to plaintiff's memorandum in opposition, doc. #57). According to the reports submitted, normal ALT results are 10-60.  On January 17, 2007, plaintiff's ALT result was 57. On July 18, 2007, the results were 113. On January 16, 2008, his ALT result was 211. Plaintiff still did not meet the prior protocol for treatment based on his ALT levels and as his max out date was less than 18 months. Additionally, plaintiff was not a candidate under the new protocol because he would max out within the time period needed for treatment and observation. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See* Pickett v. Hubert, 244 F.3d 136 (5th Cir. 2000)(unpublished)(allegation that prisoner did not receive a specific medication to treat Hepatitis C indicated a disagreement over treatment, not deliberate indifference). Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983.  Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983.  *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") In addition, plaintiff has failed to provide any expert testimony

8

to show that any actions of defendants did not conform to the applicable standard of care, much less, indifference to his serious medical needs. Further, plaintiff has not provided any evidence that his condition caused irreparable harm and/or worsened as a result of any actions taken or not taken by the defendants with regard to his Hepatitis C that would amount to a constitutional violation.[3]

Additionally, any claims of medical indifference as to defendants Ozmint and Riley should be dismissed as they are not medical personnel and plaintiff has not shown that they interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that defendants were personally involved with any alleged denial or delay of treatment or that they deliberately interfered with plaintiff's medical treatment. Therefore, any claims against these defendants for medical indifference fail.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

---

[3] Plaintiff filed grievances with respect to his alleged inadequate medical treatment for Hepatitis C. All of the grievances were reviewed and denied based on the conclusion that he did not meet SCDC's protocol for treatment and that his liver function tests had not been consistently two times the upper limit of the normal range three times within a six month period. (See grievances attached to plaintiff's opposition, doc. #57).

## **D. QUALIFIED IMMUNITY**

Defendants argue that they are entitled to qualified immunity.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate

10

> clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

### E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh

Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

### F.  SUPERVISORY LIABILITY

Defendants assert that they are entitled to summary judgment in that plaintiff cannot maintain

an action against them based on a theory of *respondeat superior*. Defendants argue that plaintiff has failed to show any conduct by the defendants which would constitute a deliberate indifference to any alleged offensive practice. Thus, defendants assert there can be no supervisory liability imposed on them.

There are three elements necessary to establish supervisory liability under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. *citing* Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. Causation is established when the plaintiff demonstrates and affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff. Id. Plaintiff has failed to show that the named defendants demonstrated deliberate indifference to a known risk, or that their actions were causally related to any injury suffered by him. Supervisory

officials are entitled to rely on medical judgments made by prison physicians. <u>Miltier v. Beorn</u>, 896 F.2d 848, 854-55 (4th Cir. 1990). Thus, it is recommended that summary judgment be granted for defendants on the theory of supervisory liability.

### G.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### H.  INJUNCTIVE RELIEF

Plaintiff's claims for injunctive relief are moot. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. <u>Williams v. Griffin</u>, 952 F.2d 820, 825 (4th Cir. 1991); <u>Ross v. Reed</u>, 719 F.2d 689, 693 (4th Cir. 1983). Plaintiff has been released from the TRCI as of October 2008. (See change of address filed on October 16, 2008, doc. #63).

### I.  EMOTIONAL DISTRESS

Plaintiff alleges that he is entitled to receive damages for emotional stress due to having to worry about his condition and not receiving treatment especially after treatment was stopped due to

14

new protocol.

Plaintiff cannot recover damages for emotional distress. Case law prior to the Prison Litigation Reform Act had held that there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish in prison, and hence, there is no liability under § 1983 regarding such claims. See Grand Staff v. City of Borger, 767 F.2d 161 (5th Cir. 1989). The Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U. S. C. § 1983. See new 42 U.S.C. § 1997e(e); Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997). As the plaintiff has not provided evidence of any physical injury, he is not entitled to recover for mental anguish or emotional distress under 42 U. S. C. § 1983. Therefore, his claims for emotional distress should be dismissed.

## II. CONCLUSION

Based on the above reasoning, it is RECOMMENDED that defendants' motion for summary judgment (document #54) be GRANTED and this claim dismissed.[4]

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 13, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[4] Defendants argue that plaintiff did not appeal the Administrative Law Court's denial to circuit court and, thus, has not exhausted his administrative remedies. Based on the above analysis that plaintiff has not shown a constitutional violation by these defendants, the undersigned does not deem it necessary to address defendants' argument as to exhaustion.

15

16